**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

COUNTRY INNS & SUITES BY CARLSON, INC., f/k/a Country Hospitality Corp.,

Plaintiff,

v.

TWO H.O. PARTNERSHIP; RONALD L. KOPESKA; DICK T. RIVARD; ROBERT H. PACE, JR.; ANDY EAKMAN; and JOHN ETHAN,

Defendants.

Civil No. 01-1214 (JRT/RLE)

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Kirk W. Reilly and Jennifer J. Kehoe, GRAY, PLANT, MOOTY, MOOTY, & BENNETT, P.A., 3400 City Center, 33 South Sixth Street, Minneapolis, Minnesota 55402, for plaintiff.

William L. Norine and Paige Fitzgerald, STEPHENSON & SANFORD, P.L.C., 501 Marquette Avenue Suite 1440, Minneapolis, Minnesota 55402, for defendants.

Plaintiff Country Inns and Suites by Carlson ("Carlson") moves for a preliminary injunction to prevent defendants from infringing its trademarks, service marks, and trade dress in violation of the Lanham Act, 15 U.S.C. 1051 §§ *et seq*. For the reasons set forth below, the Court grants the motion.

FILED NOV 1 9 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ____
DEPUTY CLERK ____

## BACKGROUND

Carlson owns trademarks, service marks, and trade dress ("the CIS marks") for "Country Inns and Suites," a nationwide chain of franchised hotels. Carlson licenses others to use the CIS marks in the operation of franchised hotels. In 1992, Carlson entered into a license agreement with defendants, whereby defendants would operate a Country Inn and Suites hotel in Two Harbors, Minnesota ("the Hotel"). The agreement provides in part that defendants must operate according to Carlson's operating manual. The agreement also permits Carlson to revise the manual at any time, and obligates defendants to abide by the changes. In July 1997, Carlson notified its franchisees that it would be changing the operating manual to require that all Country Inns & Suites hotels provide a full-size ironing board and iron in every guest room. Carlson gave its franchisees an additional notice in November 1997 before making the change in early 1998.

During five inspections of the Hotel in 1999 and 2000, Carlson found that defendants had not installed the iron, as it was obligated to do. Carlson notified defendants of this lapse, informing them that Carlson would terminate the license agreement if defendants did not comply. After receiving additional notices, defendants informed Carlson that they would not comply, and Carlson terminated defendants' license rights as of June 1, 2001. Defendants explain their failure to comply by stating that the iron requirement was only the latest of many "unreasonable, illegal, and uncalled for restrictions upon its business affairs." Def. Mem. Opposing Preliminary Inj. at 5.

Defendants assert that Carlson's operational demands had become too costly for their hotel, so they allowed the license agreement to terminate.

Carlson claims that defendants no longer possess a license to use the CIS marks, but are still using signs that infringe upon the marks. Specifically, Carlson argues that defendants are infringing upon the CIS marks with three signs: the large "pylon sign" in front of the Hotel, an entrance sign in the Hotel's parking lot, and a billboard advertisement outside of Two Harbors. Carlson concedes that defendants have altered the signs so that they are not identical to the CIS marks. Defendants have removed the words "by Carlson" from all three signs, have removed Carlson's "flower" design from the pylon sign and billboard, and have covered the flower on the parking lot entrance with a picture of a house. Carlson maintains, however, that the three signs are so similar to the CIS marks that the signs still constitute infringement.

## ANALYSIS

Carlson moves for a preliminary injunction to prevent defendants from using signs that are confusingly similar to the CIS marks to advertise the Hotel. In the Eighth Circuit, a preliminary injunction may be granted only if the moving party demonstrates that: (1) it will suffer irreparable harm absent the injunction; (2) it will probably succeed on the merits; (3) the balance of harms favors the moving party; and (4) the public interest favors granting the injunction. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The party requesting the injunctive relief bears the "complete

burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

## I. Irreparable Harm

Because a trademark represents intangible assets such as reputation and goodwill, the Court may presume irreparable harm if Carlson demonstrates a likelihood of confusion between its CIS marks and defendants' signs. *General Mills, Inc. v. Kellogg, Co.*, 824 F.2d 622, 625 (8th Cir. 1987); *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 753 & n.7 (8th Cir. 1980). Because the issue of confusion is at the heart of this case, the Court's decision whether to issue an injunction turns largely on whether plaintiff has shown probable success on the merits.

## II. Probable Success on the Merits

The test for trademark infringement is whether, under all the circumstances, the allegedly infringing mark is "likely to cause confusion, or to cause mistake, or to deceive" consumers. 15 U.S.C. § 1114(1) (2000); *General Mills*, 824 F.2d at 626; *Aveda Corp. v. Evita Marketing, Inc.*, 706 F. Supp. 1419, 1427 (D. Minn. 1989). The Court may consider several factors to determine whether there is a likelihood of confusion, including: (1) the strength of the owner's mark; (2) whether the marks, examined as a whole, are similar; (3) the alleged infringer's intent to "pass off" its goods as those of the trademark owner; (4) the degree to which the products compete with each other; (5) whether the type of product, its cost, and the conditions of purchase allow the purchaser to eliminate the confusion that would otherwise exist; and (6) incidents of

actual confusion. *General Mills*, 824 F.2d at 626; *Aveda Corp.*, 706 F. Supp. at 1428; *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980).

When, as in the present case, the alleged infringer is a former licensee of the trademark owner, the "quantum of proof necessary to establish a likelihood of confusion" can be less than in cases involving non-licensees. *See Downtowner/Passport Int'l Hotel Corp. v. Norlew, Inc.*, 841 F.2d 214, 219 (8th Cir. 1988). Indeed, "common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks." *Id.* Although the present case does not involve use of the identical trademarks, the Court recognizes that a former licensee generally bears a greater burden to avoid confusion between its mark and that of its former licensor. *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:31 (4th ed.) ("a former licensee who continues use of a mark not identical, but confusingly similar to, the formerly licensed mark is trying to convey the false message of continued affiliation and commits infringement.").[1]

---

[1] Professor McCarthy explains this rationale:

> A licensee who once had authorization [to use a trademark] became associated in the public mind with the licensor or franchisor. When such a party loses authorization but continues use of the mark, "the potential for consumer confusion is greater than in the case of the random infringer." Such continued use inevitably threatens injury to the good will and reputation of the mark and puts the licensor's reputation beyond its own control. The licensor's case for a preliminary injunction is stronger than in the ordinary trademark infringement case and "irreparable harm always flows from unlawful use and confusion."

McCarthy, *Trademarks and Unfair Competition* § 25:31 (quoting *Church of Scientology Int'l v. Elmira Mission of Church of Scientology*, 794 F.2d 38, 43-44 (2d Cir. 1986).

Carlson argues that its trademark for the CIS marks is very strong, as evidenced by their registration with the Patent and Trademark Office. Carlson further asserts that its mark and defendants' signage are so similar as to be nearly identical, and that defendants are trying to "pass off" the Hotel as a Country Inn by making only the most minimal changes. Finally, Carlson argues that defendants' Hotel is in competition with Country Inns.

Defendants' main counter-argument is that Carlson's CIS marks are weak because they are merely descriptive and have failed to establish any secondary meaning. Defendants rely on internet searches showing many other hotels with the words "country inn" in their names, on the fact that some Country Inns and Suites have signs of a different shape than the CIS marks, and on evidence that at least one other business has a sign shaped similarly to the CIS marks. Based on this evidence, defendants argue that the CIS marks are "entitled to little or no protection under the Lanham Act." *See* Def. Mem. Opposing Preliminary Injunction at 9.

The United States Supreme Court's holding in *Park N' Fly v. Dollar Park & Fly* directly refutes defendants' arguments. *See Park N' Fly v. Dollar Park & Fly*, 469 U.S. 189, 209 (1985). Carlson's CIS marks are registered under § 15 and § 33(b) of the Lanham Act. *See* 15 U.S.C. §§ 1065, 1115(b) (2000). Registration makes the marks incontestable, and gives Carlson the exclusive right to use the CIS marks in commerce. More importantly, registration allows Carlson to "rely on incontestability to enjoin infringement and [prevents] such an action [from being] defended on the grounds that the

mark is merely descriptive." *Park N' Fly*, 469 U.S. at 209. Thus, defendants' arguments cannot prevent an injunction for trademark infringement.

"The usage of an essentially identical mark upon identical services by one not authorized to do so is evidence of likelihood of confusion." *Holiday Inns, Inc. v. Alberding*, 203 U.S.P.Q. 273, 275 (N.D. Tex 1978). Upon considering all the circumstances and evidence, including the visual exhibits, the Court finds that Carlson has demonstrated that the CIS marks and defendants' altered signs are so similar that they are likely to cause confusion to hotel patrons. *Compare* Kopeska Aff. Ex. 1 *with* Schindler Aff. At best, the changes made by defendants are merely cosmetic, and would not put consumers on notice that they are not patronizing a Country Inn and Suites by Carlson. *See Holiday Inns*, 203 U.S.P.Q. at 275 (holding that "cosmetic" changes to signage by former licensee of national hotel chain were "inconsequential" and therefore insufficient to avoid a finding of infringement); *Pappan Enterprises., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 804 (3d Cir. 1998) ("Likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark."). Therefore, the Court concludes that there is a significant likelihood of consumer confusion between Carlson's CIS marks and the altered signs used at defendants' Hotel. The Court thus finds that Carlson has demonstrated likely success on the merits.

## III. Balance of Hardships

Defendants argue that compliance with an injunction would cost them uncertain amounts of money. Carlson faces damage to its trademarks, and possible loss of business and goodwill through consumer confusion. While expense is a valid consideration, the Court determines that damage to Carlson's intellectual property outweighs any financial burden that defendants would incur by altering the three signs at issue here. Therefore, the Court finds that the balance of hardship favors Carlson.

## IV. Public Interest

Federal trademark law is premised on the concept that protecting intellectual property and preventing consumer deception is in the public interest. Defendants argue that the public interest will be served by preventing Carlson from "appropriat[ing] for its exclusive commercial use words which retain generic or primary meaning." Def. Mem. Opposing Preliminary Injunction at 17-18. Based on the analysis in Part II of this Opinion, the Court finds this argument by defendants to be without merit. Therefore, the Court finds that the public interest favors issuing an injunction in this case.

In summary, the Court finds that Carlson has made a sufficient showing to enjoin defendants from infringing upon the CIS marks. Therefore, plaintiff's motion for a preliminary injunction is granted.[2]

---

[2] Plaintiff has also moved for reimbursement of attorneys' fees under the license agreement. The Court defers judgment on this issue until trial.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that plaintiff's motion for a preliminary injunction [Docket No. 6] is **GRANTED** as follows:

1. Defendants, their agents, representatives, and all persons in active concert or participation with them are enjoined from using any trademarks and service marks owned by Country Inns & Suites by Carlson, Inc. ("the CIS marks"), or any other name, designation or mark that is deceptively or confusingly similar to, or likely to cause confusion with, any of the CIS marks;

2. Defendants are ordered to alter or remove: (a) the pylon sign in front of the hotel at 1204 Seventh Avenue, Two Harbors, Minnesota ("the Hotel"); (b) the parking lot entrance sign at the Hotel; and (c) the billboard referenced in the Schindler Affidavit and the Kopeska Affidavit, in such a way so that none of these signs are deceptive or confusingly similar to, or likely to cause confusion with, any of the CIS marks;

3. Defendants shall file with the Court and serve on plaintiff's counsel, within thirty (30) days of the date of filing of the required bond, a report in writing and under oath, setting forth in detail the manner and form in which defendants have complied with the preliminary injunction;

4. In accordance with Fed. R. Civ. P. 65(c), the preliminary injunction shall become effective upon plaintiff's posting a bond with the Clerk in the amount of Two Thousand Dollars ($2,000) for the payment of such costs and damages as may be

incurred or suffered by defendants in the event defendants are found to have been wrongfully enjoined.

DATED: Nov. 19, 2001
at Duluth, Minnesota.

John R. Tunheim
JOHN R. TUNHEIM
United States District Judge